FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 26, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARAYNA G.,[1]

            Plaintiff,

    v.

MARTIN O'MALLEY, Commissioner of Social Security,

            Defendant.

No.    4:24-cv-3095-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR AWARD OF BENEFITS**

      Plaintiff Marayna G. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims she is unable to work due to her depression, anxiety, and tension headaches and related muscular tension. As is explained below, the ALJ erred when evaluating Plaintiff's symptom reports and the medical opinions; this matter is remanded for an award of benefits.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

# I.    Background

Plaintiff applied for benefits under Title 16 and claims disability beginning March 8, 2018, at the age of 31.[2] The agency denied benefits, and upon request, ALJ C. Howard Prinsloo held a telephone hearing in April 2020, at which Plaintiff and a vocational expert testified.[3]

Plaintiff testified that she struggled with her anxiety and depression, including low motivation, anxiety in crowds, difficulty going to a grocery store by herself—often not getting out of the car before simply driving back home, and if she goes inside the store she experiences crying or shaking.[4] She shared that at past jobs her coworkers have accused her of yelling, even though she did not mean too yell but was simply using a loud voice because she was anxious.[5] When confronted by her managers, she would cry and shake and need time to calm down before returning to work.[6] She testified that she attempted online college in 2019 but stopped within the year because her anxiety caused undue stress.[7] She stated that she lives with her daughter and her grandmother, for whom she is "sort of her

---

[2] AR 131–51, 440, 472.

[3] AR 29–46, 70–89.

[4] AR 34–37.

[5] AR 37.

[6] AR 37.

[7] AR 40–41.

caretaker," in that she makes sure her grandmother eats her meals and helps her up if she falls.[8] Plaintiff shared that she previously tried to sell jewelry through social media, but she had a panic attack in the middle of making a social-media promotional video and so within three months she stopped selling jewelry.[9]

The ALJ issued a decision denying benefits.[10] Plaintiff sought relief from the ALJ's denial in federal court.[11] The court determined the ALJ erred when finding that Dustin Brown, DO's opinion was not supported by the record and inconsistent with Plaintiff's activities; the court therefore remanded the matter back to the Commissioner for reevaluation.[12] Consistent with the court's remand, the Appeals Council directed the ALJ to conduct a new hearing and five-step evaluation.[13]

The new hearing was held in February 2024.[14] Plaintiff and a vocational expert testified. Plaintiff testified that since the last hearing her memory had

---

[8] AR 41–42.

[9] AR 42.

[10] AR 12–28. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[11] AR 500–01.

[12] AR 484–98 (E.D. Wash. No. 1:20-CV-03217-ACE).

[13] AR 506–08.

[14] AR 465–83.

gotten worse.[15] She shared that although she was on medication her anxiety and depression symptoms were still the same, or possibly worse.[16] She stated that on bad days, which is about four days a week, she does not leave her bedroom.[17] She shared that she lives with her teenager and her fiancé.[18] They help with household tasks such as laundry and dishes.[19] She stated that she still has muscle tension, including low back pain, and daily headaches, which can cause ear ringing.[20] She testified that laying down relieves her pain and that she lays down about 50 percent of the day.[21] She said she receives osteopathic muscular therapy (OMT) from Dr. Brown to reduce her headaches, but OMT does not eliminate her headaches.[22] She said her monthly behavioral-health appointments with Bridget Beachy, PsyD, are by phone since it is too difficult for her to leave the house, largely due to her emotional difficulties.[23]

---

[15] AR 469.

[16] AR 469.

[17] AR 469.

[18] AR 469.

[19] AR 470.

[20] AR 470.

[21] AR 471.

[22] AR 472–73.

[23] AR 472.

ALJ Prinsloo issued his second opinion on April 8, 2024; he again denied benefits.[24] The ALJ found Plaintiff's alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record."[25] The ALJ considered the lay statements from Plaintiff's mother.[26] As to the medical opinions, the ALJ found:

- the reviewing State agency opinions from Beth Fitterer, PhD, and Vincent Gollogly, PhD, persuasive.

- the treating opinions of Dr. Brown and Dr. Beachy and the evaluating psychological opinions of Tasmyn Bowes, PsyD, and Thomas Genthe, PhD, unpersuasive.[27]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since March 8, 2018, the application date and amended alleged onset date.

---

[24] AR 436–64.

[25] AR 448. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[26] AR 212–19.

[27] AR 454–57.

- Step two: Plaintiff had the following medically determinable severe impairments: tension headaches, obesity, major depressive disorder, and generalized anxiety disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except she must avoid all workplace hazards, such as moving machinery and unprotected heights; she can perform only simple, routine tasks with occasional and superficial interpersonal interaction; and she can perform no fast-paced production work.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as marking clerk and routing clerk.[28]

Plaintiff timely requested review of the ALJ's decision.

## II.     Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability

---

[28] AR 439–59.

1  determination.[29] Substantial evidence is "more than a mere scintilla but less than

2  a preponderance; it is such relevant evidence as a reasonable mind might accept as

3  adequate to support a conclusion."[30]

### III.    Analysis

5      Plaintiff argues the ALJ reversibly erred when evaluating Plaintiff's

6  symptom testimony and the medical opinions. The Commissioner disagrees,

7  submitting that the ALJ reasonably discounted Plaintiff's subjective complaints

8  and that substantial evidence supports the ALJ's evaluation of the opinion

---

[29] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g);

*Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other*

*grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an

ALJ decision due to a harmless error—one that "is inconsequential to the ultimate

nondisability determination").

[30] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

court "must consider the entire record as a whole, weighing both the evidence that

supports and the evidence that detracts from the Commissioner's conclusion," not

simply the evidence cited by the ALJ or the parties.) (simplified); *Black v. Apfel*,

143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

not indicate that such evidence was not considered[.]").

evidence. As is explained below, the ALJ again erred, both when evaluating Plaintiff's symptom testimony and the medical opinions.

**A.    Symptom Reports: Plaintiff establishes consequential error.**

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her headaches and mental-health symptoms were not entirely consistent with the medical evidence and other evidence in the record.[31] Plaintiff argues the ALJ failed to provide specific, clear, and convincing reasons for discounting her symptom reports. In response, the Commissioner argues that the ALJ's findings were supported by substantial evidence. As is discussed below, Plaintiff establishes the ALJ consequentially erred when evaluating her symptom reports related to her headaches and mental health.

1.    <u>Standard</u>

The ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[32] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[33] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) objective

---

[31] AR 448–54.

[32] *Smartt*, 53 F.4th at 499.

[33] *Id.*

medical evidence, 2) daily activities; 3) the location, duration, frequency, and intensity of pain or other symptoms; 4) factors that precipitate and aggravate the symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and 7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[34]

### 2. ALJ's Reasons and Analysis

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her medically determinable impairments inconsistent with the provider observations and statements of improvement by Plaintiff as noted in treatment records, Plaintiff's noncompliance with treatment, her activities of daily living and social interaction, and her work history and reasons for remaining unemployed.[35] The ALJ's reasons are reviewed below.[36]

---

[34] 20 C.F.R. § 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[35] AR 448–54.

[36] Plaintiff argues that the ALJ's findings in regard to Plaintiff's obesity were not a valid reason to discount her symptom testimony, particularly as she did not allege that her disability resulted from her obesity. The Court finds no error in the ALJ's consideration of Plaintiff's obesity, as the ALJ did not discount Plaintiff's symptom

1

        a.    _Headache symptoms (and related muscular tension)_

2

As to Plaintiff's headaches, the ALJ stated:

3

Despite the claimant's description of chronic severe headaches and

4

back pain, her treatment providers have observed that she is
comfortable, pleasant, or in no acute distress during appointments.

5

The claimant's allegations are out of proportion to her presentations
at appointments.

            . . . .

6

With regard to the allegedly disabling headaches and back pain,

7

between December 2017 and March 2023, the claimant repeatedly
described her tension headaches level as "minimal" at multiple

8

appointments. She noted that her headaches, neck pain, and back
pain have improved with OMT, which she tolerated procedure well.

9

For examples, in December 2017, the claimant's treatment provider

10

stated that the claimant continued improvement after OMT
performed a month ago. The claimant reported she is doing home

11

stretches, redemonstrated and reinforced. She said she is less likely
[sic] need of physical therapy for neck strengthening exercises

12

symptoms as the symptoms continue to improve with OMT. In March
2020, the claimant reported receiving good relief of tension headache

13

with OMT but has not been getting it as frequent [sic] with Dr. Brown
as she prefers. She endorsed having migraine once, and denied any

14

vision changes or aura. In September 2022 and March 2023, the
claimant stated that her tension headaches improved with OMT, and

15

requested another one. In addition, while the claimant has ringing in
her ears due to tension headaches, it was determined that her hearing

16

ability is intact.[37]

17

The ALJ also discounted Plaintiff's testimony about muscular pain in her neck and

18

back, which contributed to her tension headaches, because such were out of

19

_____

20

testimony on the basis that it was unsupported by or inconsistent with evidence

21

related to her obesity.

22

[37] AR 450 (simplified).

23

proportion to her presentation at appointments where she was observed with normal gait, station, coordination, strength, muscle tone, sensation, and reflexes, with lack of swelling or erythema, and as comfortable, pleasant, or in no acute distress.[38]

A fair review of the longitudinal treatment record reveals that substantial evidence does not support the ALJ's finding that Plaintiff's tension headaches were "minimal" or that the improvement offered by osteopathic manipulative treatment (OMT) offered sustained relief. For instance, a December 2017 treatment note for Plaintiff's neck and back pain mentions that Plaintiff's "[p]ain is much improved from initial visit [in November 2017] as patient is reporting pain as 3/10 when 3 months ago pain was constant 8/10. Pain is located at right base of neck, constant nagging ache now."[39] In May 2019, Plaintiff sought OMT from Dr. Brown and reported 5/10 pain due to her headaches.[40] In July 2019, Plaintiff reported increased tension headaches to treating behavioral health provider Dr. Beachy, and she was observed with hypertonicity of her neck and back muscles during OMT treatment.[41] Plaintiff had two more OMT sessions with Dr. Brown in the

---

[38] AR 450.

[39] AR 289–90.

[40] AR 404.

[41] AR 402 ("tension headaches increased over the past month which made it hard to be active"); AR 399 ("Exam with hypertonicity and bogginess of tissues").

summer and fall of 2019.[42] In December 2019, Plaintiff told Dr. Beachy that her headaches were making it difficult to run errands and go to church.[43] In March 2020, a different provider performed OMT; Plaintiff shared with that provider that she had been suffering from daily headaches for two years, but that OMT generally provides her with relief for about two weeks.[44] In December 2020, Plaintiff had another OMT session with Dr. Brown, during which she reported that her headaches had lessened when she was not living with her mom.[45] At her OMT session a month later, Plaintiff told Dr. Brown that she has daily headaches causing 3/10 pain.[46] During the March 2021 OMT session with Dr. Brown, Plaintiff shared that OMT helped her tension headaches and that she was experiencing pain in her neck and head.[47] Plaintiff had several more OMT sessions in 2021 during which she was typically observed with trapezius and rhomboid tension, hypertonicity of muscles, or taut bands; and by November 2021, Plaintiff reported to Dr. Brown that her neck pain and headaches were not as severe as prior to

---

[42] AR 392–93 (Aug. 2019: reporting 5/10 headache); AR 389–90 (Sept. 2019: reporting headache of 5/10 and observed with ).

[43] AR 374.

[44] AR 433–34.

[45] AR 1043–46.

[46] AR 1027–29.

[47] AR 1019–20.

starting OMT.[48] In February 2022, Plaintiff told Dr. Brown during her two OMT sessions that month that, although her neck pain and headaches were not as severe as prior to starting OMT, they were still present and she was observed with trapezius and rhomboid tension.[49] During one of these sessions, along with her OMT sessions in March, May, and June 2022, Dr. Brown noted that Plaintiff was angry and anxious, and she was observed with right anterior shoulder taut band and trapezius and rhomboid tension.[50] Plaintiff again sought treatment for her chronic tension headaches in August and September 2022, during which it was noted she said that OMT assists with her headaches, although she was observed with trapezius and rhomboid tension and as angry, anxious, and sad.[51] Plaintiff again sought treatment for chronic tension headaches in November 2022, reporting a pain level of 10 with her pain "not well controlled secondary to stress with living at parents [sic] house as well as physically sleeping on a couch. Improved with OMT in the past. Patient requested OMT today . . . Patient left clinic in good condition," with her mood being described as angry, anxious, and sad, and she was

---

[48] AR 1011–13, 996–98, 970–73, 941–43, 922–24, 906–08.

[49] AR 874–76, 882–89.

[50] AR 874–76, 860–62, 830–37.

[51] AR 805–07, 819–21.

observed with trapezius and rhomboid tension.[52] Plaintiff sought OMT with another provider in March 2023 to assist with her headaches.[53]

Considering Plaintiff's treatment history, the ALJ's finding that Plaintiff repeatedly described her tension headaches as minimal or that OMT sufficiently improved her headaches to an extent inconsistent with her reported symptoms was not a fair interpretation of the longitudinal treatment record. Even with regular OMT sessions, Plaintiff still reported regular tension headaches, with severity and frequency fluctuating, generally increasing when dealing with life stressors, and she was observed with muscular tension in her neck and back.[54] The ALJ failed to fairly consider the episodic, recurring nature of Plaintiff's headaches and muscle tension and that they were aggravated by physical and emotional distress. In addition, the ALJ failed to explain why Plaintiff's normal gait, station, coordination, strength, muscle tone, sensation, and reflexes, and lack of swelling or erythema were relevant to Plaintiff's neck and back muscular tension complaints, particularly when Dr. Brown and other providers observed muscle tension,

---

[52] AR 796.

[53] AR 633–43.

[54] *See, e.g.*, AR 1027–29 (March 2021: reports pain of 3/10 with everyday headaches); AR 922 (Oct. 2021: noting that Plaintiff has chronic tension headaches).

tenderness, hypertonicity, and taut bands in her neck and back.[55] The ALJ failed to convincingly explain how Plaintiff's observed muscle tension, tenderness, hypertonicity, and taut bands are less relevant to Plaintiff's claimed musculoskeletal tension and related tension headaches than the general observations of her being comfortable, pleasant, and in no acute distress.[56] To a physician, the term "no acute distress" merely designates that the patient's condition will not become unstable in the next 5 minutes.[57] Moreover, an observation that one is not in acute distress is not "of particular significant with a chronic condition," such as Plaintiff's chronic muscular tension.[58] Finally, the ALJ

---

[55] AR 290, 389, 399, 433, 796, 821, 837, 876, 889, 924, 972, 998, 1021.

[56] *See, e.g.*, AR 1019, 996, 982, 860, 835, 830 (reporting head and neck pain and/or observed with tenderness); AR 1032, 1040, 986, 980, 919 (observed with anxious and depressed mood and congruent affect).

[57] Library of the Seventh Circuit, *Physician Documentation – No Acute Distress*, http://www.premierdocs.com/about-us/news/2013-02-14-physician-d (uscourts.gov) (last viewed Nov. 25, 2024.)

[58] *Combs v. Berryhill*, 878 F.3d 642, 647 (9th Cir. 2017) (highlighting that the Commissioners conceded that the term "no acute distress" was not particularly relevant to the claimant's chronic rheumatoid arthritis). *See* Tension headache, https://www.mayoclinic.org/diseases-conditions/tension-headache/symptoms-causes/syc-20353977 (discussing that chronic tension headaches generally last

gave too much weight to the fact that Plaintiff denied vision changes or aura, without explaining how tension headaches, unlike migraine headaches, were expected to be accompanied by aura.[59]

By not fairly considering that Plaintiff's tension headaches persisted notwithstanding the limited benefit offered by OMT therapy, the ALJ fails to clearly and convincingly explain that Plaintiff's reported need to lay down during the day due to her headaches is inconsistent with her limited improvement with OMT therapy. This was error.

> b.     *Symptoms related to Plaintiff's anxiety and depression*

Plaintiff argues the ALJ failed to offer clear and convincing reasons to discount her testimony that there were days that she cannot leave her home because of her anxiety and depression. In contrast, the ALJ found that the "regular notations in the claimant's treating records of minimal psychiatric observations are inconsistent with the allegations of extremely limiting mental health symptoms."[60]

---

hours or may be constant, occurring 15 or more days a month for at least 3 months) (last viewed Nov. 25, 2024).

[59] *See* Tension headache, https://www.mayoclinic.org/diseases-conditions/tension-headache/symptoms-causes/syc-20353977 (last viewed Nov. 25, 2024); Medical News Today, How to tell the difference between migraine and headaches, www.medicalnewstoday.com/articles/324890 (last viewed Nov. 25, 2024).

[60] AR 450.

To support this finding, the ALJ relied on that "claimant's treatment providers and examiners have often observed the claimant with cooperative, polite, engaged, friendly, genuine, appropriate, or pleasant behavior, adequate to good eye contact, and adequate to well grooming."[61] The ALJ did note that Plaintiff "[a]t times . . . [was] depressed, tearful, anxious, flat, and/or liable affect, but she generally has an appropriate or euthymic mood and/or congruent affect."[62] Further, the ALJ relied on medical records showing normal cognition, that Plaintiff was in no acute distress during appointments, and that she reported that the impact on her overall function was mild.[63]

Plaintiff argues that the ALJ's reliance on the mention of a "mild" impact was not a fair interpretation of that treatment record. The Court agrees. The statement "[t]he impact on overall function has been mild" refers to the "progress on plan" and it is not in reference to how her mental-health symptoms have affected her, as is apparent by the notation that Plaintiff reported that "although today she is feeling improved she reports there being several days in the past few weeks where she felt she couldn't get out of bed due to her depression symptoms."[64] Accordingly, this treatment record supports and is consistent with Plaintiff's

---

[61] AR 450 (simplified).

[62] AR 450.

[63] AR 451.

[64] AR 276 (simplified).

reported difficulty with motivation due to her mental disorder. Symptom improvement must be weighed within the context of an "overall diagnostic picture," particularly for mental-disorder symptoms which often wax and wane.[65]

Likewise, the ALJ's finding that the treatment records contain "regular notations" of "minimal psychiatric observations" is not a fair interpretation of the longitudinal treatment record. The ALJ relied more heavily on the observations that Plaintiff was cooperative, polite, engaged, friendly, genuine, appropriate, and pleasant with good eye contact and grooming while giving less weight to the observations that Plaintiff was depressed, tearful, anxious, flat, or with a liable affect.[66] For instance, contrary to the ALJ's finding that Plaintiff appeared only "at

---

[65] *Holohan v. Massanari*, 246 F.3d1195, 1205 (9th Cir. 2001); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

[66] *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety and depressive disorder on the basis that the claimant performed cognitively well during examination and was described as "upbeat," "smiling very brightly," and "more talkative about positive things"); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness . . . , he cannot reach a conclusion first, and

times" as depressed, tearful, anxious, or with abnormal affect, Plaintiff was usually observed during her behavioral health sessions as depressed and anxious.[67] The ALJ's focus on Plaintiff's normal mental-health findings impacted the ALJ's evaluation of the extent of Plaintiff's depression, including her need to call the suicide hotline, her attention deficit, and her loud or pressured speech.[68] Similarly, during the psychological examination with Dr. Bowes, Plaintiff's Beck Depression Inventory score of 48 indicated severe depression and her Becks Anxiety Inventory Score of 24 indicated moderate anxiety, and Dr. Bowes observed that Plaintiff was

---

then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

[67] *See, e.g.*, AR 278 (March 19, 2018); AR 276 (May 8, 2018); AR 266 (July 26, 2018); AR 261 (August 6, 2018); AR 429 (Sept. 19, 2018); AR 413 (Jan. 3, 2019); AR 412 (Jan. 24, 2019); AR 410 (March 21, 2019); AR 401 (June 20, 2019); AR 398 (July 16, 2019); AR 397 (Aug. 9, 2019); AR 381 (Oct. 15, 2019). *See also* AR 274 (June 5, 2018: anxious and labile); AR 422 (Nov. 8, 2018: apathetic and flat); AR 414 (Dec. 28, 2014: same); AR 1066 (July 20, 2020: "patient was tearful at times when talking about the rejection she experienced from a friend; was calmer in the visit and offered daughter comfort; depressed mood, congruent affect") (simplified).

[68] *See, e.g.*, AR 845, 851, 854, 857, 900–01 (loud and/or pressured speech and/or attention deficit); AR 830 (mentioning that she called the suicide hotline because "she felt hopeless and needed someone to talk to")).

tearful at times with a dysphoric mood.[69] During his two psychological evaluations, Dr. Genthe noted that the amount of detail Plaintiff provided in response to questions was excessive, she presented with a history of depression and anxiety, she was delayed in reaching the point (tangential), and she had significant difficulties following the conversation.[70] Considering the longitudinal treatment records and the three psychological examinations, the ALJ's interpretation of the treatment records was not supported by substantial evidence. Moreover, the ALJ failed to explain how lack of acute distress, or that Plaintiff was alert and orientated, were reasons to discount her difficulties related to anxiety and depression.[71]

In addition, the ALJ's finding that Plaintiff was noncompliant with treatment is not a convincing reason supported by substantial evidence to discount her reported difficulties with leaving her home and with motivation. Although as the ALJ noted Plaintiff did miss a few appointments, the longitudinal treatment record shows behavioral-health treatment on generally a monthly basis since at least the alleged onset date. Moreover, Plaintiff's behavioral-health provider, Dr. Beachy, noted that Plaintiff's impairments make it difficult for her to keep

---

[69] AR 246–59.

[70] AR 603–18.

[71] *See Ghanim*, 763 F.3d at 1164; *Combs*, 878 F.3d at 647.

appointments, although her access to services has improved with telephone appointments.[72]

The ALJ's decision to discount Plaintiff's reported mental symptoms because Plaintiff was "not taking any antipsychotic medications" and therefore her "depression and anxiety are not as severely limiting as alleged" and indicate "her unwillingness to comply with her treatment plan" are likewise not supported by substantial evidence.[73] As previously mentioned, Plaintiff engaged in almost monthly behavioral-health sessions since the alleged onset date. The ALJ failed to show that this record reflects an unwillingness to comply with her behavioral health treatment plan. Plus, the ALJ failed to consider whether Plaintiff had good cause to not take medications, such as side effects, or whether her mental-health impairments contributed to her not taking the medication, or whether the medication when taken reduced her symptoms to an extent permitting her to sustain work.[74] In addition, although the Commissioner cites to records indicating

---

[72] AR 600–01. *See also* AR 280 ("Depression symptoms would make it hard to make and keep appointments.").

[73] AR 452.

[74] *Garrison*, 759 F.3d at 1018 (holding an ALJ may not reject a claimant's symptom testimony based on a lack of treatment if "the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions"); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294,

that Plaintiff's depression and anxiety symptoms were improved with medication, the longitudinal treatment record indicates that even with the improvement afforded by medication Plaintiff's anxiety and depression symptoms persisted, as Dr. Beachy wrote in December 2023 Plaintiff "remains highly symptomatic with mental health difficulties."[75]

In summary, the rationale given by the ALJ to discount Plaintiff's symptoms caused by her anxiety and depression was not clear enough that it had the power to convince the court nor supported by substantial evidence.

        *c.*    <u>*Activities of daily living and social interaction*</u>

The ALJ found Plaintiff's reported activities of daily living and social interaction were inconsistent with her alleged difficulties leaving her room or house, remembering and following spoken instructions, concentrating, completing

---

1209–1300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."); *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989); Soc. Sec. Rlg. 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

[75] AR 671. *See also* AR 692 (noting "Depression – doing well with effexor" but also that she would like to see her counselor more often than every 3-4 weeks, she was observed with an anxious mood and affect, and discussing the reasons that she is hesitant when it comes to medications); AR 849, 860, 869 (discussing medication side effects).

tasks, and coping with stress, pain, and anxiety.[76] Although the ALJ properly considered Plaintiff's activities and whether they were consistent with her reported symptoms and the ability to sustain work,[77] the activities relied on by the ALJ did not provide substantial evidence to support the ALJ's finding that such activities and social interaction were inconsistent with Plaintiff's alleged difficulties.

The ALJ pointed to Plaintiff's ability to operate a vehicle, which the ALJ described as "a dynamic task in a changing environment" that "requires some ability to interact at least passively with other drivers regarding the give-and-take of moving along in traffic," and found such inconsistent with Plaintiff's reported limitations.[78] The ALJ also highlighted that Plaintiff's ability to play video games required the "ability to be responsive to instructions to navigate through the complexities of each level in order to achieve a specific goal and win the game."[79]

Plaintiff, however, has not claimed that she has cognitive limitations. Instead, she testified to, and reported to treating providers, that she has difficulties leaving her house and performing and sustaining tasks due to her anxiety and depression. In addition, Plaintiff stated that she has difficulty interacting with

---

[76] AR 452.

[77] *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (superseded in part on other grounds by statute).

[78] AR 452.

[79] AR 453.

others, particularly those that she does not know or if there is a negative interaction. The ALJ failed to explain how Plaintiff's ability to operate a vehicle and drive on roads with other drivers serves as substantial evidence to discount her reported mental-health difficulties or that it reflects an ability to sustain a full workday or workweek.[80] Likewise, the ALJ's reliance on Plaintiff's ability to play video games—an activity she can perform at home—was not a convincing reason to discount her reported difficulties interacting socially and sustaining tasks outside of her home. The ALJ failed to clearly explain how Plaintiff's activities are inconsistent with her reported mental-health symptoms. The relied-on activities do not "contradict claims of a totally debilitating impairment."[81]

### d.    *Plaintiff's work history and reasons for unemployment*

The ALJ found that Plaintiff "chooses to remain unemployed for reasons not related to the allegedly disabling impairments," namely to care for her child and her grandmother.[82] The ALJ also found that Plaintiff's truncated work history

---

[80] *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (The claimant could grocery shop without assistance, walk approximately an hour in the malls, play cards, swim, watch television, and read, but these activities did not consume a substantial part of her day and so did not detract from her credibility).

[81] *Molina*, 674 F.3d at 1112-13.

[82] AR 453.

1    showed a lack of motivation to work, particularly because Plaintiff stopped working

2    unrelated to her mental impairments.[83]

3        Although an ALJ may discount a claimant's symptom reports if she engages

4    in conduct to manipulate the disability-determination process or when the

5    claimant's work history reflects a motivation not to work,[84] the ALJ's findings in

6    this regard are not convincing findings supported by substantial evidence. The

7    record does not reflect either that Plaintiff's care for her school-aged child or her

8    grandmother were of a nature or scope that were inconsistent with her reported

9    difficulty leaving her home by herself or the need to lay down for several hours

10   during the day.[85] In addition, the ALJ's findings in regard to Plaintiff's work efforts

11   do not convince the Court that Plaintiff was unemployed for reasons unrelated to

12   her mental health and headaches. Instead, the record reflects that Plaintiff did

13   seek work prior to the alleged onset date but was unable to sustain such work for a

14   variety of reasons, including a reported difficulty interacting socially and the

15

16

_____

17   [83] AR 453–54.

18   [84] *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Smolen v. Chater*,

19   80 F.3d 1273, 1284 (9th Cir. 1996).

20   [85] *See* AR 491 (E.D. Wash. No. 1:20-CV-03217-ACE). The court previously ruled

21   that Plaintiff's care for her grandmother and her daughter were "limited caregiving

22   activities" that were not inconsistent with Dr. Brown's opined limitations.

23

DISPOSITIVE ORDER - 25

inability to sustain work for a gainful period.[86] This is consistent with Plaintiff's statement to Dr. Bowes during the psychological examination that she can usually last for about two months in a workplace but then she has difficulty socializing with coworkers and customers, which causes her to be edgy or cry and then she begins calling in "sick" and loses her employment.[87] As the Ninth Circuit has recognized, one's ability to acquire a string of short-term jobs is not sufficient to show that the individual can sustain gainful work.[88]

3.    Consequential Error

In summary, the ALJ failed to offer reasons supported by substantial evidence which were clear enough to convince this Court that Plaintiff's testimony about her mental-health and tension headache symptoms was properly discounted.[89] This error was consequential, as the ALJ crafted an RFC that did not fully incorporate Plaintiff's reported symptoms.

**B.    Medical Opinions: Plaintiff establishes consequential error.**

The parties disagree as to whether the ALJ's evaluation of the medical opinions was supported by substantial evidence. For the reasons given below, the ALJ erred when evaluating the medical opinions

---

[86] AR 474, 37.

[87] AR 246.

[88] See *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 693–94 (9th Cir. 1999).

[89] See *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

1  1.  Standard

2  The ALJ must consider and articulate how persuasive he found each medical

3  opinion and prior administrative medical finding, including whether the medical

4  opinion or finding was consistent with and supported by the record.[90] The factors

5  for evaluating persuasiveness include, but are not limited to, supportability,

6  consistency, relationship with the claimant, and specialization.[91] Supportability

7  and consistency are the most important factors.[92] When considering the ALJ's

8  findings, the Court is constrained to the reasons and supporting explanation

9  offered by the ALJ.[93]

10  2.  Analysis

11  Plaintiff highlights that but for the non-examining State agency sources,

12  who reviewed the record in 2018, every source to assess her functioning found

13  disabling limitations. For instance:

14  • Dr. Brown, who treated Plaintiff for her tension headaches, opined in

15  November 2019, that Plaintiff would miss two days of work per month

16  due to tension headaches.[94]

---

[90] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[91] 20 C.F.R. § 416.920c(c)(1)–(5).

[92] *Id.* § 416.920c(b)(2).

[93] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[94] AR 324–25.

- Treating behavioral health provider Dr. Beachy opined that Plaintiff can only work 1–10 hours per week, cannot maintain attendance or complete a workday, would be off task over 30%, and would miss 4 or more days per month.[95] In November 2019, Dr. Beachy wrote:

  > [Plaintiff] and I have been working together since 2-16-17. We've had 40+ visits and she's had minimal improvement. She has very treatment resistant depression and anxiety. Her symptoms persist despite individualized and targeted treatment plans.

- Dr. Bowes, who conducted a psychological evaluation in April 2018, opined that Plaintiff was severely limited in her abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and markedly limited in her abilities to complete a normal workday and workweek without interruptions from psychologically based symptoms, maintain appropriate behavior in a work setting, communicate and perform effectively in a work setting, and understand, remember, and persist in tasks by following detailed instructions.[96]

---

[95] AR 280–82, 351–53, 599–601. *See also* AR 296–98, 307–09 (predating amended alleged onset date).

[96] AR 248–50.

DISPOSITIVE ORDER - 28

- Dr. Genthe, who conducted psychological evaluations in July 2020 and June 2021, opined that Plaintiff was markedly limited in the same abilities as identified by Dr. Bowes listed above, along with the ability to adapt to changes in a routine work setting.[97]

The ALJ found these treating and examining opinions unpersuasive.

As to Dr. Brown's absenteeism opinion, the ALJ found it "inconsistent with the conservative chiropractic treatment administered without referral for more aggressive neurological treatment attempts with medication or even trials of Botox," "unsupported and appears to rely heavily on the subjective reports of the claimant, whose allegations of symptoms and limitations have not been found to be persuasive," and "inconsistent with the reported activities of daily living."[98] These findings are not rationale reasons supported by substantial evidence to discount Dr. Brown's absenteeism opinion. First, the ALJ did not point to evidence that Plaintiff was offered more aggressive, appropriate treatment for her tension headaches.[99] Second, as discussed above, the ALJ failed to fairly consider the

---

[97] AR 603–18.

[98] AR 455.

[99] *See Trevizo v. Berryhill*, 871 F.3d 664, 677–80 (9th Cir 2017) (finding that a physician's failure to recommend a more aggressive course of treatment is not a legitimate reason by itself to discount the physician's medical opinion about the extent of the disability). *See also Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664

1    longitudinal record when evaluating Plaintiff's muscular tension and tension

2    headaches and whether OMT provided sustained improvement. The ALJ's analysis

3    and finding that Dr. Brown's absenteeism opinion relies too heavily on Plaintiff's

4    subjective reports about her headaches and muscular tension is impacted by the

5    same error. Likewise, the ALJ's finding that Dr. Brown's absenteeism opinion is

6    inconsistent with Plaintiff's reported activities of daily living including her ability

7    to care for her own hygiene, prepare simple meals, do some cleaning, care for her

8    school-aged child and her grandmother, and the other listed activities fails to be

9    supported by substantial evidence. The ALJ failed to fairly consider the nature and

10    extent of these activities, which are activities that Plaintiff can choose to do at her

11    own pace or at her home or with assistance of her child.

12        As to Dr. Beachy's treating opinions that Plaintiff should be limited to no

13    more than 10 hours of work per week because of her mental impairments, the ALJ

14    found these opinions unpersuasive because they were "extreme and inconsistent

15    with the reported activities of daily living," inconsistent with "the claimant's rather

16    benign presentations at mental status examinations and treatment appointments,"

17    inconsistent with "the statements of improved mental symptoms with treatment,"

18    and are supported by "quite superficial" evaluations that "do not contain much

19    analysis or support" but instead "rely too heavily on subjective reports of the

20

21    _____

   (9th Cir. 2010) (unpublished) ("A claimant cannot be discredited for failing to

22    pursue non-conservative treatment options where none exist".).

23

claimant, who has elected to be a stay-at-home mother."[100] As is discussed above in connection with Plaintiff's symptom reports, these findings are not supported by substantial evidence. Dr. Beachy treated Plaintiff on about a monthly basis for over six years. During this treatment period, Dr. Beachy regularly observed Plaintiff to be anxious and depressed, and on several occasions as tearful or with loud speech.[101] Dr. Beachy's notes list her observations, Plaintiff's stressors or statements at the appointment, and the treatment plan. The ALJ fails to explain how Dr. Beachy's treatment records over several years are more superficial or contain less analysis or support than the State agency opinions from 2018, which were the only mental-health opinions the ALJ found persuasive. Moreover, the ALJ fails to meaningfully assess the consistency between the treating and evaluating mental-health opinions and the evidence from those sources.[102]

3.  <u>Summary</u>

The ALJ erred when evaluating Dr. Brown's and Dr. Beachy's opinions. These errors were consequential and impacted the ALJ's evaluation of the other medical opinions.

---

[100] AR 457.

[101] *See e.g.*, AR 761–816.

[102] 20 C.F.R. § 416.920c(b).

1

**C.     Remand: award benefits.**

2          Plaintiff asks for an award of benefits. Although remand for further

3  administrative proceedings is the usual course when a harmful error occurs in the

4  administrative proceeding, this is a rare circumstance where an award of benefits

5  is appropriate.[103] This matter was previously remanded to the Commissioner to

6  reassess the medical-opinion evidence and Plaintiff's subjective complaints. As is

7  discussed above, the ALJ on remand failed to offer clear reasons to convince the

8  reviewing court that Plaintiff's symptom reports should be discounted and failed to

9  offer valid reasons supported by substantial evidence for finding the treating and

10  evaluating medical opinions unpersuasive. When crediting the treating and

11  evaluating medical opinions, Plaintiff is unable to sustain fulltime work, as the

12  vocational expert testified that an individual who is off task 20 percent or more, or

13  who misses more than one day of unskilled work per month on a regular basis is

14  unable to sustain work.[104] Further administrative proceedings will offer no benefit

15  to the disability assessment. An award of benefits is warranted.[105]

16

17

18

_____

19  [103] *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir.

20  2014).

21  [104] AR 479–81.

22  [105] *See also Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009).

23

1

## IV.    Conclusion

2   Plaintiff establishes the ALJ erred and that an award of benefits is

3   appropriate. Accordingly, **IT IS HEREBY ORDERED**:

4       1.    The ALJ's nondisability decision is **REVERSED, and this matter is**

5           **REMANDED to the Commissioner of Social Security for**

6           **immediate calculation and award of benefits**.

7       2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and**

8           **12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

9       IT IS SO ORDERED. The Clerk's Office is directed to file this order and

10  provide copies to all counsel.

11      DATED this 26th day of November 2024.

12

13  _Edward F. Shea_
      EDWARD F. SHEA
    Senior United States District Judge

14

15

16

17

18

19

20

21

22

23